

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

June 18, 2013

**BY ECF**

The Honorable Laura Taylor Swain
United States District Judge
United States Courthouse
500 Pearl Street
New York, New York 10007

Re:   United States v. Angel Tejeda et al., 11 Cr. 1015 (LTS)

Dear Judge Swain:

The Government respectfully submits this letter in opposition to defendant Glenn Guzman's motion to sever his trial from that of his co-defendant Angel Tejeda.  There is no basis for Guzman's motion.  Guzman and Tejeda are charged with participating in the exact same conspiracy to commit Hobbs Act robbery and with committing the exact same Hobbs Act robbery.  There is a strong presumption in favor of trying defendants, such as Guzman and Tejeda, who are indicted together jointly.  That strong presumption cannot be overcome unless a defendant demonstrates that he would be so prejudiced by joinder that he would be denied a fair trial.  And Guzman's arguments fall well short of that showing.  His motion should therefore be denied.

**Factual Background**

On November 29, 2011, a Grand Jury sitting in this District returned a two-count indictment, 11 Cr. 1015 (LTS) ("Indictment"), charging Glenn Guzman and three co-defendants with conspiring to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951, and with committing Hobbs Act robbery, in violation of 18 U.S.C. §§ 1951 and 2. Count One charges the defendants with conspiring, between about 2004 and 2008, to commit robberies of individuals believed to be engaged in narcotics trafficking.  Count Two charges the defendants with attempting, on or about November 5, 2007, to rob an individual of narcotics and narcotics proceeds, in the vicinity of 1529 Glover Street,

1

The Honorable Laura Taylor Swain
June 18, 2013

Bronx, New York, and causing the death of that individual as a result of this robbery attempt.

Guzman was arrested on or about December 27, 2011.  His co-defendant Joshua Colon was arrested about a week earlier, on or about December 20, 2011.  His co-defendant Nelson Ramirez was arrested on or about January 12, 2012.  But Guzman's third co-defendant, Angel Tejeda, evaded arrest until this year, when he was arrested on or about May 22, 2013.

In the time between Guzman's arrest and Tejeda's arrest, Colon and Ramirez pleaded guilty to charges in superseding informations.  Guzman, meanwhile, was granted bail on March 5, 2012.  Although Guzman did not plead guilty, he did not, at any point between December 27, 2011, and February 14, 2013, ask the Court for a trial date. To the contrary, Guzman repeatedly consented to (or himself requested) the exclusion of time for Speedy Trial Act purposes.  Even after new counsel was appointed for Guzman on February 14, 2013, Guzman consented to (or himself requested) the exclusion of time: on February 14, 2013, Guzman consented to the exclusion of time until April 9, 2013; on April 8, 2013, Guzman requested the exclusion of time until April 9, 2013; and at a pretrial conference on April 11, 2013, this Court set a trial date of July 22, 2013, and Guzman consented to the exclusion of time until the trial date.  To date, there has not been a single exclusion of time over Guzman's objection.

## Argument

Guzman raises two arguments in support of his motion to sever his trial from that of his co-defendant Tejeda.  Neither argument has merit.  Guzman's principal argument is that severance is warranted because "evidence relating to the death of the robbery victim in the Government's case against Mr. Tejeda would unfairly prejudice Mr. Guzman."  Mot. at 1.  But Guzman conspired with Tejeda to rob an individual they believed held drug proceeds; the individual was beaten to death in the course of the robbery.  Evidence that the victim of Guzman's conspiracy was killed is plainly admissible against Guzman, who helped to plan the conspiracy.  Even if the evidence were not admissible against Guzman, limiting instructions would be more than adequate to address any spillover risks.

Guzman also argues that an adjournment of the trial date would not constitute a "reasonable period of delay" for Speedy Trial Act purposes and would "risk[] denying him of his Sixth Amendment right to a speedy trial."  Id. at 2-3.  This argument is meritless because Guzman has thus far consented to (or himself requested) all of the

The Honorable Laura Taylor Swain
June 18, 2013

exclusions of time for Speedy Trial Act purposes; because an adjournment of the trial date to ensure a joint trial is plainly "reasonable" for Speedy Trial Act purposes; and because such an adjournment poses no risk to Guzman's constitutional right to a speedy trial.

**A.    Applicable Law**

The Supreme Court has made plain that there is a "preference in the federal system for joint trials of defendants who are indicted together." Zafiro v. United States, 506 U.S. 534, 537 (1993); see Fed. R. Crim. P. 8(b). This preference reflects a settled precept in criminal law. Joint trials "play a vital role in the criminal justice system." Richardson v. Marsh, 481 U.S. 200, 209 (1987). They promote efficiency and "serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." Id. at 210. Joint trials of defendants indicted together also serve to "conserve prosecutorial resources, diminish inconvenience to witnesses, and avoid delays in the administration of criminal justice." Id. at 217 (Stevens, J., dissenting). The Richardson Court explained:

> It would impair both the efficiency and the fairness of the criminal justice system to require . . . that prosecutors bring separate proceedings, presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying, and randomly favoring the last-tried defendants who have the advantage of knowing the prosecution's case beforehand. Joint trials generally serve the interests of justice by avoiding inconsistent verdicts and enabling more accurate assessment of relative culpability — advantages which sometimes operate to the defendant's benefit.

Id. at 210 (footnote omitted). For these reasons, even where joint trials invite some prejudice to defendants, "[t]he risks of prejudice attendant in a joint trial are presumptively outweighed by the conservation of time, money, and scarce judicial resources that a joint trial permits." United States v. Jimenez, 824 F. Supp. 351, 366 (S.D.N.Y. 1993).

The presumption in favor of joint trials is so strong that the Second Circuit has stated that "[t]he principles that guide the district court's consideration of a motion for severance usually counsel denial." United States v. Rosa, 11 F.3d 315, 341 (2d Cir. 1993). This presumption "is particularly strong where, as here, the defendants are alleged to have participated in a common plan or scheme." United States v. Salameh, 152 F.3d 88, 115 (2d Cir. 1998). "[T]he cases are legion that there is a strong public interest in

3

The Honorable Laura Taylor Swain
June 18, 2013

joint trials where, as here, the defendants are . . . charged in the same conspiracy."
United States v. Pirro, 76 F. Supp. 2d 478, 483 (S.D.N.Y. 1999).

A defendant seeking severance therefore shoulders the "extremely difficult burden" of showing that he would be so prejudiced by joinder that he would be denied a fair trial.  United States v. Casamento, 887 F.2d 1141, 1149 (2d Cir. 1989) (internal quotation marks omitted).  It is not enough for a defendant to show that he "may have a better chance of acquittal in [a] separate trial[]."  Zafiro, 506 U.S. at 540.  Instead, "a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."  Id. at 539; see also United States v. Panza, 750 F.2d 1141, 1149 (2d Cir. 1984) (explaining that prejudice must be "sufficiently severe to outweigh the judicial economy that would be realized by avoiding lengthy multiple trials").  Even in those rare instances where a defendant establishes a "high" risk of prejudice, "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice."  Zafiro, 506 U.S. at 539 (citing Richardson, 481 U.S. at 211); see also United States v. Freyer, 333 F.3d 110, 114 (2d Cir. 2003).

When evidence is admissible against only one defendant in a multi-defendant case, severance is not automatically granted.  The Second Circuit has repeatedly recognized that "the fact that evidence may be admissible against one defendant but not against another does not necessarily require a severance."  United States v. Carson, 702 F.2d 351, 367 (2d Cir. 1983); see also United States v. Losada, 674 F.2d 167, 171 (2d Cir. 1982).  Any spillover prejudice that may occur as a result of trying defendants jointly – even those who are not charged with the same offenses – is generally corrected by the Court's instruction that the jury consider the guilt of each defendant individually – an instruction that jurors are presumed to be able to follow.  United States v. Potamitis, 739 F.2d 784, 790 (2d Cir. 1984); see also United States v. Lasanta, 978 F.2d 1300, 1307 (2d Cir. 1992) ("[t]he district court countered any possible spillover with specific instructions to the jury . . . that the jury should consider the evidence separately against each defendant"); United States v. Zackson, 6 F.3d 911, 922 (2d Cir. 1993).

Nor is it significant that different defendants might have played different roles in the commission of a crime.  "Different levels of culpability and proof are inevitable in any multi-defendant trial and, standing alone, are insufficient grounds for separate trials." United States v. Chang An-Lo, 851 F.2d 547, 557 (2d Cir. 1988).  See also United States v. Aloi, 511 F.2d 585, 598 (2d Cir. 1975) (individual trials are not warranted merely because of "differences in degree of guilt and possibly degree of notoriety of

4

The Honorable Laura Taylor Swain
June 18, 2013

defendants"); United States v. Scarpa, 913 F.2d 993, 1015 (2d Cir. 1990).  Indeed, that remains true even if one of the defendants in a joint trial is only "marginally involved" in the conspiracy:  the Second Circuit "has repeatedly recognized that joint trials involving defendants who are only marginally involved alongside those heavily involved are constitutionally permissible."  United States v. Locasio, 6 F.3d 924, 947 (2d Cir. 1993); see also United States v. Carson, 702 F.2d 351, 366-67 (2d Cir. 1983) (fact that defendant played a lesser role in the conspiracy than many of his co-conspirators was not a sufficient ground for a separate trial).

The preference for joint trials is reflected in the Speedy Trial Act, which authorizes a "reasonable period of delay" when a co-defendant has been joined for trial with co-defendants.  See 18 U.S.C. § 3161(h)(6).  Moreover, courts have routinely rejected the argument that such a delay would threaten a defendant's constitutional right to a speedy trial.  As the Second Circuit observed, a "delay of trial" of "17 months after [a defendant's] arrest" is "not uncommonly long for a multidefendant case . . . ."  United States v. Blash, 43 Fed. Appx. 399, 401 (2d Cir. 2002) (summary order); see also United States v. Leaver, 358 F. Supp. 2d 255, 269 (S.D.N.Y. 2004) (recognizing that a post-indictment delay is less likely to be uncommonly long if the Government alleges that a defendant "had any co-conspirators whom it needed to question or arrest").

Courts considering constitutional speedy trial challenges ask first whether a delay is presumptively prejudicial; if it is, a court must then consider (1) whether the delay was "uncommonly long"; (2) whether "the Government or the defendant is more to blame for the delay"; (3) whether the defendant "asserted his right to a speedy trial in due course"; and (4) whether "the defendant suffered prejudice as a result of the delay."  Id. at 264 (internal quotation marks omitted).  The last factor focuses on the interests in "prevent[ing] oppressive pretrial incarceration," "minimiz[ing] anxiety and concern of the accused," and "limit[ing] the possibility that the defense will be impaired."  Barker v. Wingo, 407 U.S. 514, 532 (1972).  "Of these, the most serious is the last . . . ."  Id.

**B.    Discussion**

      **1.    Guzman's Evidentiary Argument Is Not A Basis For Severing His Trial**

Guzman contends that his trial should be severed from that of Tejeda because evidence concerning the beating death of the victim, including photographs of the victim's body, is inadmissible against Guzman.  This argument fails for two independent reasons.

The Honorable Laura Taylor Swain
June 18, 2013

First, the evidence is admissible against Guzman.  Guzman and his co-conspirators were charged with committing the exact same Hobbs Act robbery, on November 5, 2007, that led to the victim's death.  The evidence of the victim's death is admissible against Guzman under Federal Rule of Evidence 401 because it is proof that the robbery occurred.  It is also evidence that Guzman and his co-conspirators committed or threatened to commit physical violence to a person in furtherance of their scheme to commit robbery.  Nor would the evidence be excluded under Rule 403 merely because Guzman may not have participated in any prior robberies with Tejeda.  See Mot. at 4-5. The Government's evidence at trial will show that Guzman and Tejeda jointly planned this robbery of a suspected drug dealer, and it was plainly foreseeable that violence could result from their joint plan.  The fact that Guzman himself did not cause this violence is insignificant, given that violence was a natural and probable consequence of the violent robbery he helped to plan.  See United States v. Rahman, 854 F. Supp. 254, 264 (S.D.N.Y. 1994) ("Proof of the full nature and scope of a conspiracy is admissible even at the trial of lesser participants.").

Second, even if the evidence of the victim's death were inadmissible against Guzman, that alone would not suffice to overcome the strong presumption in favor of a joint trial, particularly given that Guzman is charged with engaging in a common scheme with Tejeda.  See Salameh, 152 F.3d at 115 (explaining that the strong presumption in favor of joint trials "is particularly strong where, as here, the defendants are alleged to have participated in a common plan or scheme").  Even if Guzman were able to show a "high" risk of prejudice, "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." Zafiro, 506 U.S. at 539 (citing Richardson, 481 U.S. at 211).  Moreover, Guzman's arguments about the admissibility of evidence are premature, and more properly addressed in pretrial motions in limine.  See United States v. King, No. 10 Cr. 122 (JGK) at *2011WL1630676 (April 27, 2011 S.D.N.Y)("The defendant also relies on Federal Rules of Evidence 403 and 404(a), but these rules relate to the admissibility of evidence and not to joinder and severance. The defendant can object to the admissibility of evidence at an appropriate time."); see also United States v. Bin Laden, 109 F.Supp.2d 211, 219 n.16 (S.D.N.Y. 2000) ("By permitting the exclusion of relevant evidence from a joint trial pursuant to Rule 403…suggests that evidentiary rulings can be used as an alternative to severance.").

Underlying Guzman's argument is that he "played a relatively minor role in the alleged conspiracy."  Mot. at 6.  But as the Second Circuit has recognized, "[d]ifferent levels of culpability and proof are inevitable in any multi-defendant trial and, standing alone, are insufficient grounds for separate trials."  Chang An-Lo, 851 F.2d at 557.

The Honorable Laura Taylor Swain
June 18, 2013

Individual trials are not warranted merely because of "differences in degree of guilt and possibly degree of notoriety of defendants." Aloi, 511 F.2d at 598.  Furthermore, Guzman errs in suggesting that he played a "relatively minor role."  The Government's evidence at trial will show that Guzman planned the robbery with Tejeda.  Guzman's role as one of the individuals who planned the robbery cannot be described as "minor."

> ## 2.        Further Delay To Accommodate A Joint Trial Would Be Reasonable And Constitutional

Since his arrest in December 2011, Guzman has consented to (or himself requested) each exclusion of time for Speedy Trial Act purposes, through July 22, 2013. Guzman now argues that any further delay from the trial date of July 22, 2013, to allow his co-defendant sufficient time to prepare for trial, would result in an unreasonable amount of delay under the Speedy Trial Act and would violate his Sixth Amendment right to a speedy trial.

This argument is meritless.  To begin with, although Guzman repeatedly notes that it has been 18 months since his arrest, the relevant delay does not begin until July 22, 2013, given that Guzman has consented to (or himself requested) the exclusion of time to that date.  A delay of a few months between July 22, 2013 and a date that would accommodate Tejeda is plainly reasonable.  Courts throughout this district have consistently recognized that a comparably short delay is insufficient to warrant severance. "While 'the factor of delay in the trial of one defendant is another that might well be taken into account,' it must be balanced against the time and expense of separate trials." United States v. Savarese, No. 01 Cr. 1121 (AGS), 2002 WL 265153, at *5 (S.D.N.Y. 2002).  In Savarese, the trial court found that a delay of two to four months was a "relatively short delay" insufficient to warrant severance when compared to the time and resources of the Court, the witnesses, the possibility of multiple trials, and the "general preference for joint trials." Id.; see also United States v. Minaya, 395 F. Supp. 2d 28, 41 (S.D.N.Y. 2005) (denying motion to sever by defendants charged with participation in a narcotics conspiracy from co-defendants charged with murder, despite the "inevitable" fact that pretrial detention would be extended for some defendants as a result).

Moreover, joinder is particularly appropriate here because the defendants have been charged with the same crimes.  The physical evidence and witnesses against Guzman are the same as that against Tejada.  Severing the trial would compel an unnecessary, duplicate trial regarding the events of November 5, 2007.  Because "[j]udicial economy is the primary factor to be considered by the district court" in evaluating motions to sever, the Court should avoid the possibilities of multiple trials

The Honorable Laura Taylor Swain
June 18, 2013

involving the same evidence and witnesses.   United States v. Jimenez, 824 F. Supp. at
366.

Guzman also contends that his constitutional speedy trial rights are at risk.  They
are not.  Any delay between July 22, 2013 (the date to which he has consented to the
exclusion of time for Speedy Trial Act purposes) and a new trial date would not be
uncommonly long.  See Blash, 43 Fed. Appx. at 401 (recognizing that even a "delay of
trial" of "17 months after [a defendant's] arrest" is "not uncommonly long for a
multidefendant case . . . .").  Guzman does not suggest that the Government is at fault for
the fact that his co-defendant Tejeda evaded arrest until May of this year.  Although
Guzman now raises speedy-trial concerns, he has repeatedly consented to (or himself
requested) all of the exclusions of time for Speedy Trial Act purposes through July 22,
2013.

Guzman's principal constitutional argument is that he would suffer undue
prejudice from an adjournment of trial.  But this argument fails.  To determine whether
the defendant suffered prejudice courts look to the interests of the right to a speedy trial
such as, "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and
concern of the accused, and (iii) to limit the possibility that the defense will be impaired.
Leaver, 358 F.Supp. 2d at 265.  Guzman makes no argument under the last of these
factors, which the Supreme Court has recognized as the most important.  Guzman does
not have a strong argument under the first factor, because he is not in custody.  Although
his conditions of pretrial release require home detention, he cannot argue that an
adjournment of trial would result in oppressive pretrial incarceration.  Finally, while
Guzman has argued that he wishes to move forward with the trial and is eager "to put
these charges behind him," any anxiety and concern is plainly outweighed by the strong
interest in a joint trial.

The Honorable Laura Taylor Swain
June 18, 2013

## **Conclusion**

       For the foregoing reasons, the Government respectfully requests that Guzman's motion be denied.

Respectfully submitted,

PREET BHARARA
United States Attorney
Southern District of New York

By:      /s/ Ryan P. Poscablo
Ryan P. Poscablo / Jessica Ortiz
Assistant United States Attorneys
(212) 637-2634 / -2398

cc:  Counsel of Record (by ECF and email)