UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

    v.

GLENN GUZMAN,

        Defendant.

No. 11-cr-1015 (LTS)

### REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF GLENN GUZMAN'S MOTION FOR SEVERANCE

Glenn Guzman respectfully submits this reply memorandum of law in further support of his motion for severance from his co-defendant, Angel Tejeda, pursuant to Rule 14(a) of the Federal Rules of Criminal Procedure, which was filed on June 11, 2013.

### ARGUMENT

**I.  The Risk to Mr. Guzman of Spillover Prejudice Overcomes the Presumption of a Joint Trial.**

In opposing Mr. Guzman's motion for severance, the Government relies heavily on the "preference in the federal system for joint trials." (Opp. at 3). However, as the Government acknowledges, this preference, and the related efficiency justifications, yield when there is "a serious risk that a joint trial would compromise a specific trial right of one of the defendants or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States,* 506 U.S. 534, 539 (1993); *United States v. Williams*, 181 F. Supp. 2d 267, 301 (S.D.N.Y. 2001). If a defendant, such as Mr. Guzman, would suffer "spillover prejudice" in a joint trial, then such "serious risk" is present and severance is warranted. *See Williams*, 181 F. Supp. 2d at 301. Spillover evidence results where "evidence inadmissible against a defendant becomes a

part of his trial *solely* due to the presence of co-defendants as to whom its admission is proper." *Id.* at 301-02 (citing *United States v. Salameh*, 152 F.3d 88, 115 (2d Cir. 1998) (emphasis added)).  Such evidence becomes prejudicial when it will likely affect the jury's consideration of a case, *see United States v. Carson*, 702 F.2d 351, 366 (2d Cir. 1983), and could prevent the jury from being able to compartmentalize the evidence in reaching a verdict against the defendant.  *See United States v. Rooney*, 37 F.3d 847, 856 (2d Cir. 1994) (noting that courts may consider whether evidence "tended to incite or arouse the jury into convicting the defendant").

As Mr. Guzman explained in his opening brief, evidence pertaining to the violent beating death of the robbery victim would be inadmissible against him under Rules 401, 402 and 403 of the Federal Rules of Evidence but admissible as to his co-defendant Mr. Tejeda.  (Mot. at 4-5). The Government contends that there is no danger of spillover prejudice because the evidence is admissible against Mr. Guzman because the violence "was plainly foreseeable."  (Opp. at 6 ).  In making this argument, however, the Government disregards that it has previously *admitted* that Mr. Guzman was not present when the victim was beaten and had no reason to expect that violence would occur.  (Bail Hrg. Tr. 10:22-25; 11:1; 13:9-21).  Indeed, at Mr. Guzman's bail hearing when the Court asked if "the government h[ad] information it wishe[d] to proffer . . . concerning prior violence in connection with robberies by this crew or . . . [the] likelihood that Mr. Guzman could or should have expected that violence, particularly of this extreme sort, would be part of the robbery activity in this particular case," (Bail Hrg. Tr. 10:22-25; 11:1), the Government could not point to any such evidence.  And specifically, the Government conceded that Mr. Guzman had no knowledge of the violence associated with robberies previously committed by Mr. Tejeda.  (Bail Hrg. Tr. 13:3-10).

Similarly, the Government's reliance on *United States v. Rahman*, 854 F. Supp. 254, 264 (S.D.N.Y. 1994), to support the admissibility of the evidence against Mr. Guzman is misplaced. Contrary to the Government's contention, Mr. Guzman is not relying on his minor role in the alleged conspiracy as a basis for severance. (Opp. at 6). Mr. Guzman's argument rests instead on the prejudice he would face in a joint trial in which evidence of the beating death of the robbery victim – alleged conduct that Mr. Guzman did not participate in and that was not foreseeable to him – is admitted against his co-defendant.

## II. A Limiting Instruction Would Be Insufficient to Protect Mr. Guzman from the Danger of Spillover Prejudice.

Contrary to the Government's assertion, a limiting instruction would not protect Mr. Guzman. The grisly nature of the spillover evidence is such that, even if a jury were instructed "to assess the evidence against each defendant separate from the proof against the other defendants," it is unlikely that they would be able to heed those instructions. *See United States v. Lasanta*, 978 F.2d 1300, 1306-07 (noting the factors utilized to determine whether severance should have occurred). "The presumption that a jury will adhere to a limiting instruction evaporates where there is an overwhelming probability that the jury will be unable to follow the court's instructions." *United States v. Jones*, 16 F.3d 487 (2d Cir. 1994).

Here, the presumption that the jury will adhere to a limiting instruction cannot be relied on because a jury cannot reasonably be expected to ignore graphic evidence of the beating death of another human being. *See*, *e.g.*, *Williams*, 181 F. Supp. 2d at 303 (finding that no "limiting instruction to the jury will suffice to remove this prejudice"); *United States v. Dowtin*, No. 10 CR 657(SJ)(RML), 2012 WL 7679552, at *4 (E.D.N.Y. Nov. 20, 2012) (court was "unconvinced that a limiting instruction can effectively mitigate such prejudice"). Thus a limiting instruction would be insufficient and severance is the only appropriate alternative. *United States v. Baker*,

3

432 F.3d 1189, 1236-37 (11th Cir. 2005) (finding severance the only appropriate remedy "if the prejudice flowing from a joint trial is clearly beyond the curative powers of [limiting] instructions").

### III. Consideration of the Admissibility of Spillover Evidence is Not Premature.

The Government contends that consideration of the admissibility of this evidence, including the autopsy and crime scene photos, is "premature" and would be "more properly addressed in pretrial motions in limine," (Opp. at 6), but the Government is incorrect. The inadmissibility of this evidence as to Mr. Guzman directly bears on Mr. Guzman's claim of spillover prejudice. Accordingly, it is entirely appropriate to address the inadmissibility of this evidence in the context of Mr. Guzman's motion for severance. *See Williams*, 181 F. Supp. 2d at 301. Indeed, it is the admissibility of this evidence in a joint trial and the resulting prejudice to Mr. Guzman that creates the spillover prejudice that compels severance of Mr. Guzman's trial. *Id.*

The Government's reliance on *United States v. King*, No. 10Cr.122(JGK), 2011 WL 1630676, at *8 n.3 (S.D.N.Y. Apr. 27, 2011), does not change this analysis. Although the court, in a footnote, states that "[t]he defendant can object to admissibility of evidence at an appropriate time," *id.*, the court does not suggest that when a defendant's motion for severance is based on spillover prejudice, it would be inappropriate for the court to consider the admissibility of such evidence in the context of the defendant's severance motion. For Mr. Guzman, this is the appropriate time to object to the admissibility of the evidence.

### IV. Any Further Delay of Mr. Guzman's Trial Would Be Neither Reasonable Nor Constitutional.

In highlighting Mr. Guzman's prior consent to the exclusion of time under the Speedy Trial Act, (Opp. at 7), the Government ignores the unique circumstances of Mr. Guzman's case.

Eighteen months ago (and more than four years after the alleged crime), Mr. Guzman was arrested under the current Indictment.  A trial date has been set, but then recently Mr. Tejeda was arrested and the Government sought to adjourn Mr. Guzman's trial.  Mr. Guzman's consent over the past few months reflected his understanding that his trial would begin on July 22, 2013 – it does not reflect his consent for a trial at some indefinite future date.  Indeed, since Mr. Tejeda's arrest, Mr. Guzman has not consented to the exclusion of any time, but rather has brought a timely motion for severance in order to preserve his right to a speedy trial.

Further, the factors cited by the Government accentuate the undue prejudice that Mr. Guzman will suffer from an adjournment of his trial.  (*See* Opp. at 8) (citing *United States v. Leaver*, 358 F. Supp. 2d 255, 269 (S.D.N.Y. 2004) (listing factors consider in evaluating prejudice: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused, and (iii) to limit the possibility that the defense will be impaired")).  The Government attempts to distinguish Mr. Guzman's home confinement from incarceration; however, this distinction is unwarranted.  Mr. Guzman feels incarcerated in the confines of his home.  For the past 14 months he has been unable to find employment or be, as he has in the past, a contributing member of society.  Further delay would simply extend this status quo indefinitely and prevent Mr. Guzman from moving on with his life.  And while the Government relies on *United States v. Minaya* for the proposition that extended incarceration alone may not necessitate severance, it glosses over the *Minaya* court's consideration of the fact that the delay was due, in part, to the court's own trial calendar and that severance might not have increased the likelihood of an earlier trial date.  395 F. Supp. 2d 28, 41.  Here, however, Mr. Guzman already has a scheduled trial date of July 22, 2013.

Additionally, the Government recognizes that Mr. Guzman would like to "put these charges behind him" but then makes the conclusory assertion that any anxiety and concern he has is outweighed by the interest in a joint trial. (Opp. at 8). But Mr. Guzman's sentiments reflect real anxiety and serious concern that cannot be ignored. The crime for which Mr. Guzman is charged occurred in 2007, more than five years ago. Now Mr. Guzman has a young daughter whose life he very much wishes to participate in but, on account of his home confinement, he is unable to do so in a meaningful way or even visit with her on a regular basis. Any further delay of his trial causes Mr. Guzman great concern that his inability to be sufficiently involved in her life will be extended for an indefinite period.

## CONCLUSION

For the reasons set forth above and in Mr. Guzman's opening brief, the Court should sever Mr. Guzman's case from that of Mr. Tejeda, order that Mr. Guzman's July 22 trial proceed as scheduled, and grant any other relief that the Court may find proper.

Dated: June 21, 2013
      New York, New York

Respectfully submitted,

  s/ Mark J. Stein
Mark J. Stein (mstein@stblaw.com)
Alexandra C. Pitney (lpitney@stblaw.com)

**SIMPSON THACHER & BARTLETT LLP**
425 Lexington Avenue
New York, New York 10017
Phone: (212) 455-2000
Fax: (212) 455-2502

*Attorneys for Defendant Glenn Guzman*